# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **ELIZABETH LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **8:06CV601** |
| **THE EVANGELICAL LUTHERAN** | ) | |
| **GOOD SAMARITAN SOCIETY d/b/a** | ) | **ORDER** |
| **GOOD SAMARITAN VILLAGE OF** | ) | |
| **HASTINGS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the magistrate judge on defendant's MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION (Filing 6). Having carefully considered the parties' arguments and evidentiary submissions (Filings 6, 7, 16-19), I find that the motion should be granted and the case should be stayed pending the completion of arbitration.

## I. FACTUAL BACKGROUND

Plaintiff is a former employee of the defendant. Plaintiff suffers from asthma, severe anxiety and dyslexia. She received training through Goodwill and was placed to work at Good Samaritan Village on March 4, 1991.

Defendant is a long-term health care facility owned and operated by The Evangelical Lutheran Good Samaritan Society ("Society"). The Society is a nonprofit tax-exempt chain and owns or operates approximately 240 long-term health care, assisted living, and retirement communities in 25 states. The Society's principal economic activity, providing long-term nursing care, is primarily funded under the federal Medicaid and Medicare programs.

In December 2003, the Society implemented a Fair Treatment Policy ("FTP"), which outlined the Society's mandatory dispute resolution process. As part of the implementation, the Society asked the defendant's employees to enter into an Agreement to Mediate/Arbitrate Claims and Disputes ("Agreement"). From December 3, 2003 through December 5, 2003, defendant conducted several in-service training sessions with its employees regarding the FTP and the Agreement. At each session, defendant distributed copies of the Agreement to employees, explained its contents, and invited employees to sign copies of the Agreement. The signed Agreements were placed in the employees' personnel files.

During each in-service training session, defendant also showed a 30-minute video called "Understanding the Fair Treatment Policy." (Filing 21). This video explained the terms of the FTP and the impact of signing the Agreement. Specifically, the video verbally explained several times that, by signing the Agreement, the employees would be electing to arbitrate all employment-related disputes with the Society, waiving their right to pursue claims in court, and waiving their right to a jury trial. The video also explained the nature of the Agreement, why it was being implemented, the differences between arbitration and litigation in state and federal courts, and addressed common questions related to arbitration agreements and other things. The video specifically informed employees that if they signed the Agreement and later brought a lawsuit against the Society, then the Society would seek to dismiss the lawsuit and compel arbitration pursuant to the terms of the Agreement. The video advised the employees they could discuss the Agreement with an attorney prior to signing it, to fully explore the impact of the Agreement. The Society asked only that the employees return the Agreement by the beginning of January 2004. The video further advised that

existing employees would be expected to follow the provisions of the FTP, even if they did not sign an Agreement, if they elected to continue working for the Society.

Plaintiff attended the in-service training session regarding the FTP and Agreement on December 3, 2003 at 1:30 p.m.  Plaintiff's personnel record contains an Agreement to Mediate/Arbitrate Claims and Disputes, dated December 3, 2003, and bearing the plaintiff's signature.

The complaint alleges that plaintiff was initially employed to work in a laundry position.  In November 2004, her duties were changed to include delivery of laundry items to residents' rooms. Plaintiff alleges she was disciplined in November 2004 for performing laundry delivery duties more slowly than other employees.  As an accommodation, plaintiff asked that she be returned to work in the laundry room and/or to delivery the laundry in a manner that would accommodate her disability, described in her evidentiary materials (Filing 16) as a combination of asthma, severe anxiety, and dyslexia.  Apparently, plaintiff was also assigned to do computer work and requested training. Plaintiff's requests were refused.  Plaintiff's employment was terminated on February 2, 2005.

Plaintiff submitted a Fair Treatment Resolution request on February 11, 2005.  Plaintiff's internal FTP requests or grievances were ultimately denied on April 18, 2005.  Plaintiff filed a complaint with the Nebraska Equal Opportunity Commission (NEOC) and the U.S. Equal Opportunity Commission (EEOC) regarding her termination.  The documents attached to the Complaint indicate that conciliation efforts were unsuccessful. The NEOC issued an Administrative Closure notice on June 16, 2006, and the EEOC issued a Notice of Right to Sue on July 25, 2006. This action was filed in state court on September 7, 2006 and removed to federal court on September 19, 2006.

## II.  LEGAL ANALYSIS

Plaintiff's claims arise under the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 20-148 (NFEPA) and the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq*. (ADA).  In its Motion to Stay Proceedings and Compel Arbitration, defendant contends that plaintiff's claims are all subject to the agreement to mediate/arbitrate claims and disputes pursuant to the FTP.

Plaintiff contests the existence of an agreement to arbitrate on the ground that the FTP was not adequately explained to her and she did not understand the contents of the documents due to her disabilities.  Plaintiff further contends her NFEPA claims are not subject to arbitration under the Nebraska Uniform Arbitration Act, *see* Neb. Rev. Stat. § 25-2602.01(f)(2).[1]  Plaintiff also complains that defendant did not comply with the notice provisions of Neb. Rev. Stat. § 25-2602.02.[2]  Thus, plaintiff proposes that all claims be litigated in federal court, as it would be unduly burdensome to require her to litigate her state claims in federal court and arbitrate her federal claims.

In reply the defendant contends, *inter alia*, that the Federal Arbitration Act preempts the Nebraska Uniform Arbitration Act for purposes of this discussion.

---

[1]Section 25-2602.01 provides, in relevant part:
  (b) A provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract, if the provision is entered into voluntarily and willingly.
                              * * * *
   (f) Subsection (b) of this section does not apply to:
                              * * * *
      (2) A claim under the Nebraska Fair Employment Practice Act;

[2]Section 25-2602.02 provides:
  The following statement shall appear in capitalized, underlined type adjoining the signature block of any standardized agreement in which binding arbitration is the sole remedy for dispute resolution: THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

### A.  Standard of Review

 "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)."  In this regard, "[s]ection 2 of the [Federal Arbitration Act ("FAA")] provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract.'"  *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) (quoting 9 U.S.C. § 2; emphasis by Supreme Court); *see also Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 790 (8th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999).  Thus, "[b]efore a party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement."  *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695-96 (8th Cir. 1994) (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)).

"The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'"  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985).  When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).  Generally applicable contract defenses, such as fraud[3], duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2;

---

[3]In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403-04 (1967), the Supreme Court held that a claim of fraud in the inducement of a contract as a whole must go to an arbitrator, but issues which go to the making of the agreement to arbitrate should be decided by a court.

-5-

however, courts may not invalidate arbitration agreements under state laws applicable *only* to

arbitration provisions. *Casarotto*, 517 U.S. at 687 (emphasis in original). The court must stay the

proceeding and compel arbitration if the court determines that the parties' dispute falls within the

scope of a valid arbitration agreement. *Houlihan*, 31 F.3d at 696; 9 U.S.C. §§ 3 & 4.

### B.  Preemption

Significantly,

> The FAA preempts state law on the interpretation and construction of arbitration
> provisions that fall within the scope of the FAA. *Cybertek, Inc. v. Bentley Systems,
> Inc.*, 182 F. Supp. 2d 864, 868 (D. Neb. 2002) (citing *Webb v. R. Rowland & Co.,
> Inc.*, 800 F.2d 803, 806 (8th Cir. 1986)). The FAA applies to any arbitration
> provision in "a contract evidencing a transaction involving commerce." 9 U.S.C. §
> 2; [FN8] 10 A.L.R. Fed. 2d 489 (citing *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52,
> (2003)). The United States Supreme Court interprets the phrase "involving
> commerce" broadly and has determined it is equivalent to the phrase "affecting
> commerce." 10 A.L.R. Fed. 2d 489 (citing *Alafabco*, 539 U.S. at 56).

*Affiliated Foods Midwest Coop., Inc. v. Integrated Distrib. Solutions*, LLC, Case No. 8:06CV532,

— F. Supp. 2d — , 2006 WL 3060028 at *3 (D. Neb., Oct. 23, 2006).

In this case, the defendant employer is part of a nonprofit tax-exempt chain which owns or

operates approximately 240 facilities in 25 states. The defendant has shown that it is engaged in

interstate commerce. Accordingly, the court finds that the employment relationship between the

plaintiff and the defendant is a "transaction involving commerce," and that the arbitration agreement

in this case is governed by the FAA and not by Nebraska's Uniform Arbitration Act. *See Patterson

v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir. 1997) (plaintiff was required to arbitrate Title

VII and Missouri Human Rights Act claims); *Siebert v. Amateur Athletic Union of the United States,

Inc.*, 422 F. Supp. 2d 1033, 1046 (D. Minn. 2006) (ADA claims were subject to arbitration and

Minnesota Human Rights Act was preempted by the FAA). Since the arbitration agreement at bar

is governed by the FAA, it is immaterial that the document signed by the plaintiff does not bear the notice that is required by Neb. Rev. Stat. § 25-2602.02.

### C.  Existence of an Agreement to Arbitrate

The FAA, 9 U.S.C. § 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"Under the FAA, ordinary contract principles govern whether parties have agreed to arbitrate." *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir. 1997) (citing *Daisy Mfg. Co., Inc. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)).  Under Nebraska law, "[t]o create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." *Nebraska Nutrients, Inc. v. Shepherd*, 261 Neb. 723, 751, 626 N.W.2d 472, 498 (2001); *accord Gerhold Concrete Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 269 Neb. 692, 700, 695 N.W.2d 665, 672 (2005).

"As a general rule, every person of mature age able to read and write, who has an opportunity to read an instrument, and executes the same is presumed to know the contents of the instrument signed and is estopped from denying the contents thereof." *Kramer v. Eagle Eye Home Inspections, Inc.*,14 Neb. App. 691, 706, 716 N.W.2d 749,763 (2006).  In this case, and noting the contents of plaintiff's affidavit (Filing 16, Ex. A), it is apparent that the plaintiff is of mature age and is able to read and write.  The plaintiff attended training regarding the implementation of the FTP.  Even assuming that plaintiff was unable to read the written documents now at issue, the contents of the

-7-

documents were verbally explained to her in the video shown during the training session. The court has reviewed the video. Defendant's employees, including the plaintiff, were advised that they could discuss the Agreement to Mediate/Arbitrate Claims and Disputes with an attorney prior to signing it, to fully explore the impact of the Agreement. The video specifically informed employees that if they signed the Agreement and later brought a lawsuit against the Society, then the Society would seek to dismiss the lawsuit and compel arbitration pursuant to the terms of the Agreement. The video further advised that existing employees would be expected to follow the provisions of the FTP, even if they did not sign an Agreement, if they elected to continue working for the Society. Defendant's employees were told they were not expected to return the Agreement until the beginning of January 2004; plaintiff, however, signed the document on December 3, 2003.

The court finds that the plaintiff continued with her employment with defendant on the condition that she agreed to utilize the FTP, including its arbitration requirement, to resolve any and all disputes regarding her employment. The court further finds that plaintiff is estopped from denying the contents of the arbitration agreement and that the parties did agree to arbitrate.

### III. CONCLUSION

When reviewing an arbitration clause, the court asks only

(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement. "We have described this narrow scope of review as addressing 'only such issues as are essential to defining the nature of the forum in which a dispute will be decided.' .... We will not extend that review 'to the consideration of public policy advantages or disadvantages resulting from the enforcement of the agreement.' .... Questions about remedy are also outside our scope of review because they do not affect the validity of the agreement to arbitrate."

*Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (citations omitted). In this instance, the court finds there is a valid arbitration agreement and the parties' dispute falls within the terms of the

arbitration agreement.  Pursuant to the FAA, 9 U.S.C. § 3, on the application of either party, the court must stay the suit until arbitration has occurred.

**IT THEREFORE IS ORDERED:**

1.   Defendant's MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION (Filing 6) is granted.

2.   The parties shall electronically file written status reports concerning the progress of the arbitration proceedings.  The first status report shall be filed by March 15, 2007.  Subsequent status reports are due every 90 days thereafter until all arbitration proceedings are completed.

Pursuant to NECivR 72.2, a party may appeal this order by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law.[4]  **The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal.** *See* NECivR 72.2(d).

**DATED December 8, 2006.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**

---

[4]Motions to stay proceedings and to compel arbitration constitute nondispositive matters which a magistrate judge can determine pursuant to 28 U.S.C. § 636(b)(1)(A).  *See, e.g., All Saint's Brands, Inc. v. Brewery Group Denmark, A/S*, 57 F. Supp. 2d 825, 833 (D. Minn. 1999).